## MARYLAND CASUALTY CO. v. CITIZENS' NAT. BANK OF LOS ANGELES.

(Circuit Court of Appeals, Ninth Circuit. October 26, 1925.)

No. 4685.

1. Exceptions, bill of ⚖══▷39(1)—Bill not settled and allowed during term, though filed more than 4 months after entry of final judgment, held not entitled to consideration.

Where amended bill of exceptions, due to courtesy of counsel, was not filed until shortly before expiration of term and more than 4 months after entry of final judgment, *held*, in absence of any order extending term for that purpose, court was without authority to settle and allow bill after expiration of term, and bill so settled and allowed would not be considered.

**2. Principal and surety ⬅142—Surety on bond of secretary of cotton factorage company held not relieved from liability on theory that company had incurred no actual loss.**

Where secretary of cotton factorage company procured warehouse receipts from bank by substituting trust receipts and agreeing to secure outbound documents which would be returned to bank, but, instead of delivering bills of lading, obtained on shipping cotton to bank, collected drafts attached to such bills and used proceeds in paying after-incurred indebtednesses of company, which would not have been incurred had officers of company known true facts, *held* surety on secretary's bond could not escape liability on ground that, since proceeds had been used in discharging company's obligations, company had in fact incurred no loss.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; William P. James, Judge.

Suit by the Citizens' National Bank of Los Angeles, as assignee of the California Cotton & Factorage Company, against the Maryland Casualty Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. S. Bicksler, W. C. Smith, and Dale H. Parke, all of Los Angeles. Cal., for plaintiff in error.

Wm. J. Hunsaker, E. W. Britt, and T. B. Cosgrove, all of Los Angeles, Cal., for defendant in error.

Before GILBERT, RUDKIN, and Mc-CAMANT, Circuit Judges.

RUDKIN, Circuit Judge. In the latter part of 1919 the California Cotton & Factorage Company was organized as a corporation, and thereafter engaged in the business of buying, selling, handling, and dealing in cotton and cotton by-products. Under the by-laws of the company, the secretary was vested with absolute and unrestricted power and authority to enter into any and all contracts and agreements, and to perform any and all acts and things necessary in carrying out and fulfilling the purposes and business of the corporation. One Sears was appointed secretary, and continued in that capacity until his death on May 3, 1921. Upon his appointment as secretary, the Maryland Casualty Company executed a fidelity bond wherein it agreed to reimburse the employer "for any loss, not exceeding $50,-000 of money, securities, or other personal property (including that for which the employer may be responsible to others), which

the employer shall have sustained by reason of any act or acts of fraud, dishonesty, forgery, embezzlement, wrongful abstraction, or willful misapplication on the part of the employee, while in the performance of his duties as secretary in the service of said employer and occurring during the continuance of this bond."

During the incumbency of Sears as secretary, and during the continuance of the fidelity bond, the Citizens' National Bank of Los Angeles received drafts drawn on the cotton company to the number of 87, amounting to the sum of $82,487.96 in all. Attached to these drafts were 1,476 warehouse receipts for that number of bales of cotton. The warehouse receipts were indorsed in blank by the parties to whom issued, and were negotiable in form and transferable by delivery. The bank presented the drafts to the cotton company, and, upon their acceptance by the secretary, remitted and paid to the persons presenting them their face value. Later Sears procured the warehouse receipts from the bank and substituted in their place trust receipts which acknowledged the receipt of the warehouse receipts and recited that the purpose in so doing was to secure outbound documents therefor, which would be returned to the bank upon cancellation of the trust receipts. The secretary then took the warehouse receipts, shipped the cotton represented thereby, and received the bills of lading in their place. But, instead of delivering the bills of lading to the bank, as agreed, he collected drafts attached to the bills of lading and deposited the proceeds in the bank to the credit of the cotton company. The deception thus practiced on the bank was at all times concealed from the officers of the cotton company, and the secretary at all times represented to such officers that the money on deposit in the bank represented the profits made in the conduct of the business of the cotton company. As soon as the deception was discovered by the officers of the cotton company, the secretary committed suicide, and a claim for reimbursement was made on the casualty company. It further appears from the complaint that the moneys received by the secretary through these machinations were applied by him in payment and satisfaction of divers and sundry claims for merchandise and supplies furnished, and for labor and services rendered to the cotton company, and other claims and demands against it, not including, however, in whole or in part, the claim

of the bank. Such, in brief, was the case made by the complaint, aside from averments that the acts of the secretary were fraudulent, dishonest, wrongful, and willful. The action was prosecuted by the bank, as assignee of the cotton company.

A demurrer to the complaint was overruled, and later the issues presented by complaint and answer were tried by the court, without the intervention of a jury, by written stipulation of the parties. Special findings of fact were made, and on March 9, 1925, a final judgment was entered in favor of the plaintiff. March 14, 1925, upon stipulation of counsel for the parties, and at the instance of counsel for the defendant, the court made an order extending and enlarging the time within which to prepare and file a proposed bill of exceptions to and including April 15, 1925. April 14, 1925, a like order was made, under like circumstances, extending and enlarging the time to and including May 15, 1925. May 15, 1925, a third order was made, under like circumstances, extending and enlarging the time to and including June 15, 1925. June 8, 1925, the proposed bill of exceptions was served on counsel for the plaintiff, and was lodged with the clerk of the court two days later. June 9, 1925, by stipulation of counsel, and at the instance of counsel for the plaintiff, the time for proposing amendments to the proposed bill of exceptions was extended to and including July 9, 1925. July 8, 1925, the proposed amendments were filed and lodged with the clerk. In the meantime, on July 6, 1925, the writ of error was allowed. The term of court, at which the final judgment was entered, expired by limitation on Sunday, July 12, 1925, and no order was made at any time extending or enlarging the term for the purpose of settling the bill of exceptions, or otherwise. On July 22, 1925, counsel for plaintiff notified counsel for defendant that the time for settling the bill of exceptions had expired, and thereafter objected to its settlement or allowance for the same reason. But, notwithstanding this objection, the court below settled and allowed the bill of exceptions on July 29, 1925, after the expiration of the term.

[1] On the foregoing facts, the defendant in error has moved this court to strike the bill of exceptions because not allowed or certified within the term of court at which the final judgment was entered, or within any extension thereof. This motion must be granted.

In Michigan Insurance Bank v. Eldred, 143 U. S. 293, 298, 12 S. Ct. 450, 452 (36 L. Ed. 162), the court said:

"By the uniform course of decision, no exceptions to rulings at a trial can be considered by this court, unless they were taken at the trial, and were also embodied in a formal bill of exceptions presented to the judge at the same term, or within a further time allowed by order entered at that term, or by standing rule of court, or by consent of parties; and, save under very extraordinary circumstances, they must be allowed by the judge and filed with the clerk during the same term. After the term has expired, without the court's control over the case being reserved by standing rule or special order, and especially after a writ of error has been entered in this court, all authority of the court below to allow a bill of exceptions then first presented, or to alter or amend a bill of exceptions already allowed and filed, is at an end."

In O'Connell v. United States, 253 U. S. 142, 40 S. Ct. 444, 64 L. Ed. 827, the court had extended the time for settling the bill of exceptions by special order until December 15, 1917, but the bill of exceptions was not in fact certified until a later date, and, in refusing to consider the bill of exceptions, the Supreme Court said:

"We think the power of the trial court over the cause expired not later than the 15th of December, 1917, and any proceedings concerning settlement of a bill thereafter were coram non judice. We may not, therefore, consider the bill copied in the record."

Again, in Exporters v. Butterworth-Judson Co., 258 U. S. 365, 42 S. Ct. 331, 66 L. Ed. 663, the court said:

"The policy of the law requires that litigation be terminated within a reasonable time and not protracted at the mere option of the parties. * * * We think the better rule and the one supported by former opinions of this court requires that bills of exceptions shall be signed before the trial court loses jurisdiction of the cause by expiration of the term or such time thereafter as may have been duly prescribed."

[2] More than four months elapsed between the entry of the final judgment and the expiration of the term at which the judgment was rendered. This was more than ample time for the preparation and settlement of a bill of exceptions. The delay was caused by courtesy of counsel and not by very extraordinary circumstances over

which the plaintiff in error had no control. Indeed, the circumstances which prevented the settlement of the bill of exceptions within the time allowed by law were but commonplace and very ordinary. The bill of exceptions must therefore be disregarded, and this leaves for consideration only the sufficiency of the complaint, and the sufficiency of the special findings to support the judgment. While these questions are raised by the assignments of error, unfortunately the assignments are discussed in the brief in connection with other assignments which depend upon the bill of exceptions, and we are left somewhat in the dark as to the particular objections urged against the complaint and findings alone. The chief objection seems to be, however, that there was no loss to the employer, since all moneys received by the secretary through the conversion of the warehouse receipts were used by him in discharging other obligations of his employer. If the moneys were used in the discharge of then present and existing obligations of the employer, there would be much force in this contention. But they were not so used. They were in fact used to discharge obligations thereafter incurred by the secretary, and which never would have been so incurred were it not for the fraud and deception practiced by him.

The court below found, in substance, that Sears continued to act as secretary, after the receipt of the moneys derived from the conversion of the warehouse receipts, and used the moneys so received for the purpose of dealing and speculating in cotton in the name of his employer; that such dealings and speculation were carried on at a loss; that the losses so incurred were paid out of the moneys so received; that, relying upon the false and fraudulent representations of the secretary, the cotton company and its officers continued the business in which the cotton company was engaged, and continued thereafter to employ Sears as secretary; and that the cotton company and its officers would not have continued in business and would not have permitted Sears to continue to act as secretary, if the cotton company and its officers, other than Sears, had knowledge of the fraud and deception practiced upon them.

In the face of these findings, it cannot be seriously contended that the fraud of the secretary did not result in substantial loss to the cotton company.

The complaint and findings amply support the judgment, and the judgment is accordingly affirmed.